# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JACQUELINE OLSON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MRS BPO, LLC and NCB MANAGEMENT SERVICES, INC., <br><br> Defendants. | Case No.: 18-cv-176 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jacqueline Olson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Defendant MRS BPO, LLC ("MRS") is a foreign limited liability company with its principal offices located at 1930 Olney Avenue, Cherry Hill, New Jersey 08003.

6. MRS does substantial business in Wisconsin and has a registered agent for service of process in Wisconsin located at Cogency Global Inc., c/o Dane County Title Company, Inc., 901 South Whitney Way, Madison, Wisconsin 53711.

7. MRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. MRS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. MRS is a debt collector as defined in 15 U.S.C. § 1692a.

10. Defendant NCB Management Services, Inc., ("NCB") is a foreign corporation with its principal place of business located at One Allied Drive, Trevose, Pennsylvania 19053.

11. NCB is engaged in the business of collecting debts, both owed to others and to itself, which debts were acquired after default, and incurred for personal, family, or household purposes.

12. The primary purpose of NCB's business, and NCB's principal purpose, is the collection of consumer debts.

13. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

14. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6)

2

(emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

15. NCB uses instrumentalities of interstate commerce, including the mail, telephone in any business the principal purpose of which is the collection of debts owed to itself and also debts owed to others. NCB mails debt collection letters on its own behalf. *See, eg. Olbinski v. NCB Management Services Inc.*, Case No. 17-cv-308 (E.D. Wis.) (Compl., Exhibit A).

16. NCB's website states:

NCB Management Services, Inc. has been buying and collecting consumer debt on a large-scale and national basis for nearly 20 years. We are trusted by some of the most recognized banking brands in the country. Our operational capabilities and experience have made us very competitive in this vertical.

- Strong funding sources through bank credit facilities
- Exceptional compliance track record
- Experienced National Debt Buyer
- Buy & Hold Strategy
- Aggressive Acquisition Plans

http://www.ncbi.com/.

17. NCB is a debt collector as defined in 15 U.S.C. § 1692a.

18. A company meeting the definition of a "debt collector" (here, NCB) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf).

3

**FACTS**

19. On or around June 4, 2017, MRS mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to NCB and allegedly originally owed to "RISE FINANCIAL LLC D_B_A RISE" ("Rise"). A copy of this letter is attached to this complaint as Exhibit A.

20. Upon information and belief, the alleged debt that MRS was attempting to collect was a personal consumer loan account, used only for personal, family, or household purposes.

21. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

22. Upon information and belief, Exhibit A is a form debt collection letter used by Nationwide to attempt to collect alleged debts.

23. Upon information and belief, Exhibit A is the first written communication MRS mailed to Plaintiff regarding this alleged debt.

24. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the alleged debtor along with, or within five days of, the initial communication.

25. Exhibit A is dated June 4, 2017.

26. June 4, 2017 was a Sunday. Upon information and belief, Exhibit A was actually sent to Plaintiff on or after June 5, 2017.

27. The thirty-day "validation period" described in Exhibit A begins when the consumer receives the validation notice. 15 U.S.C. § 1692g(a)(3) ("within 30 days after receiving this notice"); *see Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997)

("subparagraphs (3) and (4) of § 1692g(a) give the consumer thirty days **after receipt of the notice to dispute** . . . .") (emphasis added).

28. Upon information and belief, Exhibit A would have been received on or about June 8, 2017.

29. If Exhibit A was received on June 8, 2017, the thirty day validation period would have ended on July 8, 2017.

30. On or around July 3, 2017, MRS mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

31. Upon information and belief, Exhibit B is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

32. Upon information and belief, Exhibit B is also a form debt collection letter used by MRS to attempt to collect alleged debts.

33. Exhibit B is dated July 3, 2017.

34. July 3, 2017 was a Monday. Upon information and belief, Exhibit B was actually sent to Plaintiff on July 3, 2017, exactly 29 days after Exhibit A was sent to Plaintiff.

35. Upon information and belief, Exhibit B was received less than thirty days after Exhibit A was received.

36. Because the validation period does not begin until the consumer receives the validation notice, the consumer still would have had time to trigger her validation rights when Exhibit B was received. *Chauncey*, 118 F.3d at 519 (consumer that mails a written dispute on the thirtieth day triggers verification rights even if the debt collector receives the notice of dispute after the validation period has ended); *see also Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the recipient of a debt collection letter covered by the FDCPA

5

validly invokes the right to have the debt verified whenever she *mails* a notice of dispute *within thirty days of receiving* a communication from the debt collector.").

37. One purpose of the thirty-day validation period is to allow the debtor time to consider all of her options and she is entitled to the full thirty days before mailing her notice of dispute. *Jacobson*, 516 F.3d at 95-96.

38. Exhibit B contains the following:

> We recognize that a possible hardship or pitfall may have prevented you from satisfying your obligation. We are presenting three options to resolve your balance. We are not obligated to renew this offer.

Exhibit B.

39. The unsophisticated consumer is not an FDCPA lawyer. Although she suspects that the plain language in the validation notice allows her to mail a written dispute on the thirtieth day, she does not know this definitively.

40. The unsophisticated consumer, receiving Exhibit B, would understand the statement that the debt is an "obligation" to mean that she no longer has time to dispute the debt.

41. The confusion as to the consumer's validation rights is compounded because Exhibit B is received during the validation period but more than thirty days after Exhibit A was dated and mailed, suggesting to the consumer that debt collectors need not provide verification of the debt if a written dispute is mailed during, but received after, the validation period.

42. Exhibit B falsely and misleadingly implies that the 30-day FDCPA validation period has already expired when MRS mailed Exhibit A. The validation period runs from the date that the consumer *receives* the letter, not when the debt collector mails it. Thus, the validation period had not expired when MRS sent Exhibit B to Plaintiff, nor had it expired when Plaintiff received Exhibit B.

6

43. Moreover, even if the consumer had *already* mailed a written dispute just a day or two prior to her receipt of Exhibit B, Exhibit B would mislead the unsophisticated consumer to believe that the debt collector need not provide verification because the validation period would have ended prior to the debt collector's mailing of the validation notice.

44. Plaintiff was deceived, misled, and confused by Exhibits A and B.

45. The unsophisticated consumer would be deceived, misled, and confused by Exhibits A and B.

### *The FDCPA*

46. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

47. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather

7

whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

48. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

49. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

50. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations

8

of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

51. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

9

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

52. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

53. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

55. 15 U.S.C. § 1692g(a) states:

> a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

56. 15 U.S.C. § 1692g(b) prohibits debt collectors from communicating in ways that overshadow or contradict the validation rights during the thirty-day validation period.

57. "The absence of a reprinted validation notice or reference to the debtor's right to request validation, *combined* with the specific text of a second letter, can create impermissible overshadowing or contradiction." *Velazquez v. Fair Collections & Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 124895, at *18-19 (N.D. Ill. Aug. 30, 2013).

## COUNT I - FDCPA

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

59. Exhibit B falsely represents the amount of time which intervened between the transmittal of that letter and Defendant's first letter to Plaintiff, Exhibit A.

60. Exhibit B falsely implies that the FDCPA validation period had expired when it had not.

61. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## CLASS ALLEGATIONS

62. Plaintiff bring this action on behalf of a class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, and (c) and who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, less than 31 days after the Exhibit A was mailed, (d) seeking to collect a debt for personal, family, or household purposes, (e) between February 1, 2017 and February 1, 2018, inclusive, (f) that was not returned by the postal service.

63. The classes are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

64. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA.

65. Plaintiff's claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

66. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

67. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

68. Plaintiff hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 1, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue

Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

13